IN THE UNITED STATES DISTRICT COURT
FOR MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TERRY VESTAL, individually and On behalf of Mary Altgelt, deceased <br><br> Plaintiff, <br><br> v. <br><br> JAIME M. VASQUEZ, M.D.; and THE CENTER FOR REPRODUCTIVE HEALTH, P.C., <br><br> Defendants. | JURY DEMAND <br> Civil Action No. 3:03-0051 <br> Judge Nixon <br> Magistrate Knowles |

## AFFIDAVIT OF JAIME M. VASQUEZ, M.D.

STATE OF TENNESSEE )
)
COUNTY OF DAVIDSON )

After being first duly sworn, the defendant Jaime M. Vasquez, M.D. states as follows:

1. I am over the age of 18 and competent to testify by way of this Affidavit.

2. I am a physician licensed to practice medicine in the State of Tennessee, and have been continuously licensed to practice medicine in Tennessee from 1991 to the present. I graduated from the School of Medicine at the Catholic University of Chile, Santiago, Chile. I then completed residency training in obstetrics and gynecology at the University of Chile School of Medicine in 1977, and then post doctoral training in reproductive physiology at the Catholic University of Chile Medical School in 1978. Then, I

spent three years in a research fellowship in Gynecological Endocrinology with the Department of Physiology and Endocrinology at the Medical College of Georgia, which I completed in 1981, and then I completed residency training from 1982 through 1984 with the Department of Obstetrics and Gynecology at the University of Maryland, School of Medicine and Hospitals. Following that training, I spent two years in fellowship training with the Division of Reproductive Endocrinology and Infertility with the Department of Obstetrics and Gynecology at the Wayne State University Affiliated Hospitals School of Medicine.

3. I am board certified by the American Board of Obstetrics and Gynecology with subspecialty board certification with the Division of Reproductive Endocrinology and Infertility by The American Board of Obstetrics and Gynecology. From 1995 to the present, I have been the Medical Director for The Center For Reproductive Health ("The Center") and have been engaged in the practice of fertility medicine in Nashville, Tennessee from 1995 to the present.

4. I am familiar with the recognized standard of acceptable professional practice expected of physicians practicing the specialty of reproductive endocrinology ("standard of care") as that standard existed in Nashville, Tennessee from 1995 to the present, and including all material times that I provided care and treatment to Mary Altgelt.

5. I first saw Mary Altgelt on August 5, 1996 at which time we discussed her inability to successfully conceive. I suggested at that time that Ms. Altgelt consider in vitro fertilization with egg donation. Three years later, on May 10, 1999, Ms. Altgelt returned to my office at which time we counseled again regarding her infertility and at which time Ms. Altgelt elected to proceed with treatment in an effort to help her conceive. Ms. Altgelt

2

remained a patient at The Center For Reproductive Health, where she was seen by me and members of my staff at The Center during the course of treatments she was provided in an effort to achieve in vitro fertilization. Ms. Altgelt's last visit to The Center was on April 3, 2002, and subsequent contacts occurred by telephone on May 8, 21, 28, June 3, and 11, 2002.

6. As stated above, I am familiar with the recognized standard of acceptable professional practice expected of me at all times that I provided care and treatment to Ms. Altgelt. I am further familiar with the recognized standard of acceptable professional practice ("standard of care") expected of the healthcare providers at The Center For Reproductive Health, P.C., of which I was and am the Medical Director. At all times that I and the healthcare providers at The Center provided care and treatment to Ms. Altgelt, I and the staff at The Center complied with that standard of care and nothing I or the staff did or failed to do negligently caused an outcome which otherwise would not have occurred. In particular, neither I nor the healthcare providers at The Center deviated from the standard of care, nor did I or the staff at The Center negligently fail to treat and diagnose Ms. Altgelt; fail to recommend further testing treatment and follow up; fail to refer the patient to a proper specialist for any treatment; fail to exhibit and increase surveillance for a patient who had signs and symptoms of a cyst or mass; misread ultrasounds that were clearly indicative of an abnormal process; inflict severe emotional distress on Ms. Altgelt or Terry Vestal; fail to inform Ms. Altgelt of abnormal findings on her ultrasounds; or engage in outrageous conduct or intentional or negligent infliction of emotional distress.

FURTHER, AFFIANT SAITH NOT.

_____
JAIME M. VASQUEZ, M.D.

Subscribed and sworn to before me on this
the ___ day of _____, 2006.

_____
NOTARY PUBLIC STATE
My Commission Expires: _____

My Commission Expires JULY 19, 2008